# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD P. WALKER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES HENSLEY**, *et al.*, | : | **No. 08-0685** |
| **Defendants.** | : | |
| | : | |

**Norma L. Shapiro, S.J.**                                    **December 23, 2009**

## MEMORANDUM

Before the court are two motions to dismiss Ronald P. Walker's amended complaint under Federal Rule of Civil Procedure 12(b)(6), Walker's motion for leave to amend the complaint and serve process beyond 120 days, and certain defendants' motion for leave to file a reply brief. Walker's amended complaint alleges eight claims under 42 U.S.C. § 1983. This court has jurisdiction under 28 U.S.C. § 1331.

## I.      BACKGROUND

We accept the following factual allegations as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff Ronald P. Walker ("Walker") is a prisoner of the Commonwealth of Pennsylvania Department of Corrections ("DOC") housed at SCI Graterford. He is currently serving an aggregate sentence of 19 to 49 years for two separate convictions in 1986 and 1987.

### A. Incorrect Classification as a Sex Offender and Resulting Denials of Parole.

In June 2000, Walker received notification that he had been classified as a "Sex Offender;" the classification was incorrect as Walker had never plead guilty or been convicted of a sexual offense. On June 9, 2003, Walker filed a complaint under 42 U.S.C. § 1983 and Pennsylvania common law against officials at SCI Graterford because of his classification as a sex offender and DNA samples taken in 1995 and 2002.

Walker became eligible for parole in 2004; after review the Pennsylvania Board of Probation and Parole ("PBPP") refused to grant parole on October 7, 2004. Walker alleges PBPP's reasons for denying parole relate to his failure to accept responsibility for a sexual crime, but he was never convicted of a sexual crime. On May 4, 2005, Walker, filing a petition for writ of habeas corpus with this court, argued that the denial of parole violated due process because the PBPP relied on an inaccurate sex offense classification in his file.

The PBPP conducted a second parole review for Walker, and again refused to grant him parole; Walker was notified on December 28, 2005. Walker filed a second petition for writ of habeas corpus alleging that the PBPP again relied on the incorrect sex offender classification in denying parole. Walker's second habeas petition was held in suspense pending the outcome of the first action. On August 15, 2006, the chairperson of the PBPP, defendant Catherine McVey, issued an internal memorandum providing all requested relief. By orders dated September 28, 2006 and April 18, 2007, this court found Walker had a substantive due process right in parole decisions based on accurate information, but denied the habeas petitions as moot.

### B. Walker's 2005 and 2006 Pre-Release Applications.

In July 2005, Walker submitted an application for pre-release to defendant Charles Hensley, Walker's counselor at SCI Graterford. At the time of his application, Walker had not been convicted of a crime rendering him ineligible for pre-release, and no other reason

existed for his case to be considered problematic.  Months passed and Walker received no response to his application, even though other inmates applying during the same time received replies, including favorable replies.  Walker sent Inmate Request Forms to defendants Hensley, DOC Unit Manager Scott Pasquale, and Superintendent of SCI Graterford David DiGuglielmo, to inquire about the status of his pre-release application; each defendant told Walker that he was still waiting for paperwork to be processed.  On April 3, 2006, Hensley informed Walker that his pre-release application was initially approved, but then denied.  The same day, Pasquale told Walker that DiGuglielmo had stopped processing his pre-release application, and that Walker had been previously notified of this fact on several occasions.

On April 13, 2006, DiGuglielmo explained to Walker that his application had been denied because his case was problematic and community sensitivity weighed against a favorable recommendation.  The same day, Walker filed a grievance alleging that the pre-release denial was illegal.  In response, DiGuglielmo stated the application was denied because of confidential information that could not be shared with Walker.

In June 2006, Walker filed a second pre-release application.  While this application was pending, DiGuglielmo told Walker that if he did not "back off" his lawsuits against the prison and its officials, DiGuglielmo would deny his second pre-release application.  On or about November 21, 2006, DiGuglielmo denied the application.

C.     The Events of June 5 and 6, 2006.

On the evening of June 5, 2006, Walker became very ill and sought medical care in the prison infirmary.  A test revealed Walker was borderline diabetic, and the infirmary staff gave him an insulin injection.  An employee of the infirmary informed Walker that he should be sure to eat the following day because of the injection.

At approximately 4:00 a.m. on June 6, 2006, Walker was awakened by an unnamed corrections officer to be taken to court for a hearing. Walker knew the hearing had been continued and informed the corrections officer. Despite repeated protestations, Walker was taken to the Assessment Unit to prepare for transport to the court. At the Assessment Unit, Walker tried to persuade corrections officers Danisavich, Cahill and Captain Williams that he did not need to go to court. Walker also informed the three officers that he had received an insulin shot the night before and therefore needed to eat. Captain Williams told Walker that he could have either an additional shot of insulin or food, but not both. Captain Williams then decided that Walker would have an insulin shot but not food.

After Walker received the second insulin shot, defendants Williams, Cahill and Danisavich refused to give Walker any food, and took him to court. Cahill and Danisavich brought Walker to the courthouse, where a federal marshal informed them that the hearing had been continued. In response, Cahill and Danisavich requested that Walker be placed in a holding cell while they called SCI Graterford. The marshals agreed, and Cahill and Danisavich indicated they would be "right back."

Cahill and Danisavich returned to the courthouse approximately three hours later. A marshal inquired whether Walker should receive a meal prior to transport to SCI Graterford, but defendants stated they did not want Walker to eat. Cahill and Danisavich told the marshal that Walker would be fed at SCI Graterford. Walker was not fed when he returned to SCI Graterford.

As a result of not eating, Walker became very ill, lost consciousness, soiled his clothes, vomited, and temporarily lost his vision.[1] At SCI Graterford, Walker was taken to

_____

[1] It is not clear from the allegations of the amended complaint whether these ailments occurred at the federal courthouse, during transport back to SCI Graterford, or upon returning to the prison.

the dispensary where he received medical attention. Defendants Cahill and Danisavich gave Walker a paper bag purportedly containing food; the bag contained only cartons of milk. Walker was subsequently diagnosed with a kidney condition and other health problems he alleges were caused by the events of June 6, 2006. Walker remains diabetic and takes daily medication for his condition.

### D. The Events of March 25, 2008.

On January 7, 2008, Walker was paroled to the Allentown Community Corrections Center ("Allentown CCC"). On Friday, March 21, 2008, federal marshals delivered legal papers for a pending lawsuit to Walker. Defendant Tracy Jacobson, director of the Allentown CCC, observed the delivery. She approached Walker afterward and warned him that she would not tolerate his filing any lawsuits while at Allentown CCC. During the same time period, Walker filed a complaint against defendant Allison Robertson, his parole agent, and pursued grievances regarding the conditions of his parole with Senator Pat Browne's office.

On March 25, 2008, Walker was summoned to a meeting with defendants Jacobson, Robertson, Lieutenant Michael Gourley of the DOC, and his counselor. The meeting was purportedly to clarify issues with regard to Walker's Social Security status. Defendants Jacobson, Robertson and Gourley claimed that Walker was hostile during the meeting, threatened Jacobson, and refused to comply with her orders. Walker maintains that he was not hostile and the account provided by the defendants was inaccurate. Walker alleges that Jacobson, Robertson and Gourley agreed to hold the meeting to fabricate a parole violation so that he would be arrested and re-incarcerated. Based on defendants' accounts of Walker's conduct at the meeting, Walker was discharged from Allentown CCC, arrested and re-incarcerated at SCI Graterford.

### E.    Subsequent Events.

At a hearing on June 25, 2008, the Montgomery County Court of Common Pleas expunged the incorrect sex offender designation from Walker's record.  On December 4, 2008, Walker received notification that he was required to participate in the Sex Offender program at SCI Graterford.  Walker also received notice that he would be considered for parole by the PBPP.  At a December 10, 2008 parole hearing, Walker informed the interviewer that he still was improperly categorized as a sex offender.  The PBPP was to reschedule Walker's parole interview, but has not yet set a date.[2]

## II.    MOTIONS TO DISMISS

Walker's amended complaint asserts eight substantive counts for violations of Section 1983 against thirteen named defendants.  Section 1983 authorizes redress for violation of constitutional rights and provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 does not create a substantive right; it provides a method for vindicating federal rights conferred by the United States Constitution.  *Baker v. McCollan*, 443 U.S. 137 (1979).  To establish a claim under Section 1983, a plaintiff must demonstrate: (1) violation of a right secured by the Constitution and the laws of the United States; and (2) deprivation of the right by a person acting under color of state law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).

---

[2]    Walker has not alleged a constitutional violation arising from these events.

## A. Legal Standards

### 1. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard is not a "probability requirement," but it does require more than a possibility that a defendant has acted unlawfully. *Id.*

In deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint and matters of public record, including judicial proceedings. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The court need not assume that the plaintiff can prove facts not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### 2. Screening Under 28 U.S.C. § 1915, 28 U.S.C. § 1915A and the Prison Litigation Reform Act

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The legal standard for dismissing a complaint for failure to state a claim

pursuant to Section 1915(e)(2)(B) and Section 1915A is identical to the legal standard used when ruling on a Rule 12(b)(6) motion. *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under Section 1915(e)(2)(B)). Because Walker initiated this action by a petition *in forma pauperis*, and because he challenges the conditions of his imprisonment, the court reviews his claims under its screening authority.

### B.    Defendant Amy Clewell

Amy Clewell is named in the amended complaint as a PBPP supervisor at the Allentown District Office. Amended Complaint ¶ 16. To meet the standards set forth in Rule 8, a complaint must at least contain a modicum of factual specificity, identifying the defendant and the particular conduct alleged to have harmed the plaintiff. Walker's amended complaint fails to make any mention of Clewell or her alleged unconstitutional conduct. Permitting Walker to proceed against her would be both prejudicial and futile as defendant Clewell has no notice of the cause of action against her. Clewell will be dismissed as a defendant.

### C.    Defendant Cahill

Defendant Cahill moves to dismiss Counts II, VII, and VIII against him for Walker's failure to serve the amended complaint timely. Rule 4(m), Fed. R. Civ. P., requires that plaintiff serve the summons and complaint within 120 days after filing the complaint. Rule 4(m) directs the court to dismiss the action without prejudice if the deadline is not met or order that service be effected within a specified time if plaintiff shows good cause for the failure.

Walker filed his amended complaint on January 28, 2009. The 120-day time period for plaintiff to obtain service expired May 28, 2009. On that date, Walker moved for leave to file a second amended complaint and to serve process on Cahill beyond the 120-day period. On June 26, 2009, counsel for Cahill executed a waiver of service of process. The

waiver clearly states that a party who signs the waiver retains "all defenses and objections to the lawsuit and to the jurisdiction or venue of the court, *except* for objections based upon a defect in the summons or *in the service of summons*." (Paper no. 32) (emphasis added). The waiver of service moots Cahill's motion to dismiss based on untimely service, and his motion to dismiss will be denied.

### D. Mootness

The amended complaint requests: a declaratory judgment that the events described violated Walker's rights under the First, Eighth and Fourteenth Amendments; compensatory, nominal and punitive damages; costs of suit including attorney's fees; and a permanent injunction preventing defendants from further violations of Walker's constitutional rights. Defendants argue that, because Walker is no longer under the authority of any Allentown CCC official or any parole official in the district, and because he cannot show that if paroled he would be sent back to Allentown CCC, all claims against Jacobson, Robertson and Gourley should be dismissed as moot.

The adjudicatory power of a federal court depends upon "the *continuing* existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (emphasis in original). "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id*. at n.10 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 139 (3d Cir. 2009).

If a prisoner has been transferred, his claim for injunctive and declaratory relief fails to present a case or controversy. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). In his amended complaint, Walker acknowledges that he is no longer paroled at Allentown CCC. As a result of his re-incarceration, Walker is no longer subject to retaliation at Allentown CCC. Walker's requests for injunctive and declaratory relief for Counts IV and V are moot.

Walker's claims for damages and attorney's fees continue to present a live controversy. *Boag v. MacDougall*, 454 U.S. 364 (1982) (transfer to another prison did not moot a claim for damages arising from placement in solitary confinement); *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 41 (3d Cir. 1985). Counts IV and V will not be dismissed.

### E.     Fourteenth Amendment Claim

Count I of Walker's amended complaint asserts a claim for deprivation of rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Walker alleges only:

> On or about December 28, 2005, after receiving a second parole hearing, the Parole Board again denied Mr. Walker parole.

> Upon information and belief, in reaching the December 28, 2005 decision to deny Mr. Walker parole, the Parole Board again considered Mr. Walker a sex offender, despite evidence to the contrary.

Amended Complaint, ¶¶ 31-32. The defendants[3] have moved to dismiss this claim as barred by the statute of limitations.

A complaint may properly be dismissed for failure to state a claim on statute of limitations grounds if the untimeliness of the complaint is apparent on its face. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). The time limitation for claims brought under Section 1983 is the state time limit for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). Pennsylvania has a two-year limitation period for personal injury actions. 42 Pa. C.S.A. § 5524(7); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993).

---

[3]     Defendants McVey, Murray, Hower, Robertson, Clewell, Hensley, Williams, Danisavich, DiGuglielmo, Pasquale, Jacobson and Gourley moved to dismiss in part Walker's amended complaint. (Paper no. 23). Defendant Cahill filed separately a motion to dismiss the amended complaint and incorporated by reference paper no. 23. (Paper no. 33). For purposes of this opinion, the motions to dismiss will be treated as one.

The limitations period begins to run from the time the plaintiff knows or has reason to know of the injury on which the action is based. *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). The limitations period began to run here on December 28, 2005, the date Walker alleges he learned of the parole denial. Walker filed a petition to proceed *in forma pauperis* on December 21, 2007, ten days before the expiration of the limitations period. (Civil Action No. 07-5492).

Filing a petition *in forma pauperis* under 28 U.S.C. § 1915 with an accompanying complaint commences an action against the named defendants, even though it is not filed with the clerk of court unless the court grants plaintiff's petition. *See McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996). The period of limitations is tolled while the court considers a petition *in forma pauperis*, but the limitations period restarts if the court denies the petition. *Richardson v. Diagnostic Rehab. Center*, 836 F. Supp. 252 (E.D. Pa. 1993).

By Order dated January 25, 2008, this court denied the petition and instructed the clerk to mark the case closed.[4] On February 11, 2008, Walker filed another petition to proceed *in forma pauperis*.[5] (Civil Action No. 08-685). Walker's petition was granted by Order dated March 4, 2008, and his complaint was filed that day. The petition *in forma pauperis* filed December 21, 2007, in Civil Action No. 07-5492, tolled the limitations period, but when the court denied the petition and closed the case on January 25, 2009, the time

---

[4] On February 5, 2009, this court issued a non-material amendment to the January 25, 2009 Order, instructing that, because Walker was no longer in custody, if he elected to file a new civil action by petition *in forma pauperis* no filing fee would be required. This Order had no effect on the running of the limitations period.

[5] In *Houston v. Lack*, 487 U.S. 266 (1988), the United States Supreme Court crafted the prisoner mailbox rule, providing that the date on which a pro se prisoner transmits documents to prison authorities for mailing is considered the actual filing date. *Id*. at 275. Although the docket reflects a filing date of February 13, 2008, the court will assume that plaintiff turned his complaint over for mailing the same day he signed it, February 11, 2008.

continued to run.  The petition and complaint in this case, filed February 11, 2009, were filed beyond the limitations period, and Count I will be dismissed as untimely.

### F. Retaliation Claims.

In Counts II, III, and IV, Walker asserts claims of retaliation in violation of his First Amendment right to resort to legal process.  In Count II, Walker alleges that DOC defendants Williams, Cahill and Danisavich intentionally denied him food in retaliation for two pending lawsuits against SCI Graterford prison officials.  In Count III, Walker alleges that DOC defendants DiGuglielmo, Hensley and Pasquale denied his 2006 application for pre-release in retaliation for the same two lawsuits.  In Count IV, Walker alleges that DOC defendants Jacobson and Gourley and PBPP defendant Robertson falsely accused him of misconduct to have him discharged from community corrections and re-incarcerated in retaliation for a complaint against Robertson, and grievances filed with Senator Browne's office.

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). To state a *prima facie* case of retaliation, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

*Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Once a prisoner has made a *prima facie* case, a defendant may still prevail by proving by a preponderance of the evidence that it would

have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Rauser*, 241 F.3d at 334.

"[T]he right of access to the courts . . . must be freely exercisable without hindrance or fear of retaliation." *Allah*, 229 F.3d at 224; *see also Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (locating right to access the courts in a retaliation case in the First Amendment right to petition for redress of grievances). In all three counts, Walker has alleged that he was engaged in constitutionally protected conduct (seeking redress from the courts) and established the first element of retaliation.

To show an "adverse action," plaintiff must demonstrate that a defendant's action was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F.3d at 225. Walker has alleged: denial of food for almost a day (in contravention of doctor's orders), causing unconsciousness, loss of vision and kidney damage**;** denial of his qualified pre-release application; and discharge from a community corrections center and re-incarceration. Each is sufficient evidence of adversity to withstand dismissal.

Walker has alleged a sufficient causal link between his lawsuits and grievances and the adverse action complained of in Counts II, III and IV, including specific statements by DiGuglielmo and Jacobson, to withstand dismissal.

### G. Conspiracy Claims.

Walker alleges two conspiracies to violate his civil rights. In Count V, Walker alleges Jacobson, Robertson and Gourley conspired to manufacture a parole violation so that he would be arrested and re-incarcerated in retaliation for filing a complaint against Robertson, and grievances about the Allentown CCC with Senator Browne's office. In Count VIII, Walker alleges Williams, Cahill and Danisavich conspired to deprive him of

food in retaliation for two pending lawsuits against SCI Graterford officials. Defendants have moved to dismiss Count VIII for failure to state a claim.

"To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989). It is not sufficient to simply make "conclusory allegations of concerted action but [be] devoid of facts actually reflecting joint action." *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998). A plaintiff alleging a conspiracy to violate civil rights must present material facts showing that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *See D.R. by L.R. v. Middle Bucks Area Voc. Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (en banc).

On the conspiracy claim in Count VIII, Walker alleges the following events: Late in the evening of June 5, 2006, Walker became ill and was treated by the prison infirmary. A test indicated Walker was borderline diabetic, and he received an injection of insulin. An infirmary employee instructed Walker to eat the next day because of the effects of the insulin shot.

At approximately 4:00 a.m. the next morning, Walker was awakened by an unnamed corrections officer to be taken to court for a hearing. At the Assessment Unit, Walker tried to persuade defendants Williams, Cahill and Danisavich that he did not need to go to court. Walker also informed the three defendants that he had received an insulin shot and needed to eat.

Williams told Walker he could have food or insulin, but not both; Williams then determined that Walker would have insulin but not food. After the shot, Williams, Cahill and Danisavich refused to give Walker food, and took him to court. When Walker, Cahill and Danisavich arrived at the courthouse, a marshal informed the officers that the hearing

had been postponed. Cahill and Danisavich requested that Walker be placed in a holding cell, and said they would return after calling SCI Graterford. They returned approximately three hours later.

A marshal inquired whether Walker should eat before transport back to SCI Graterford. Cahill and Danisavich informed the marshal that they did not want Walker to eat, and that he would be fed on his return to SCI Graterford. Walker was not fed when he returned.

As a result of Cahill and Danisavich's actions, Walker became ill, lost consciousness, soiled his clothes, vomited and temporarily lost his vision. A guard took him to the dispensary at SCI Graterford for medical attention. Cahill and Danisavich gave Walker a brown paper bag containing only cartons of milk. Walker was later diagnosed with a kidney condition and other health problems he attributes to the deprivation of food. *See* Amended Complaint, ¶¶ 48-69.

These facts sufficiently allege both a conspiratorial agreement involving state actors and an act in furtherance of the conspiracy designed to deprive Walker of his constitutional rights. While the mere incantation of the words "conspiracy" or "acted in concert" does not satisfy the pleading requirement of a conspiracy claim, Walker has described the persons responsible, the conduct, approximate timing, and motive of the conspiracy sufficient for a factfinder to infer the existence of a conspiratorial agreement. *Rose v. Bartle*, 871 F.2d 331, 366 n. 60 (3d Cir. 1989). The essence of a conspiracy is an agreement, and Walker has asserted facts tending to show a "meeting of conspiratorial minds" between Williams, Cahill and Danisavich. *See D.R. by L.R.*, 972 F.2d at 1377. These allegations sufficiently plead a Section 1983 conspiracy claim, and the claims of Count VIII will not be dismissed, without prejudice to a motion for summary judgment following discovery.

## H.    Fourth Amendment Claim.

Count VI of Walker's amended complaint asserts a claim for unlawful seizure against Jacobson, Robertson and Gourley.  Robertson moves to dismiss because parole officers are authorized to arrest parolees without a warrant for violating a condition of parole, and Walker was discharged from Allentown CCC for violation of parole.  *See* Motion to Dismiss, paper no. 23, at 12.

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV.  To determine whether an arrest is valid, we look to the law of the state where the arrest took place. *Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005). In Pennsylvania, parole officers have police power and authority to arrest a parolee, without a warrant, for violations of parole. 61 P.S. § 331.27.  Walker must prove that Robertson lacked reasonable suspicion to believe there was a violation of parole to prevail. *United States v. Baker*, 221 F.3d 438, 443-44 (3d Cir. 2000);  *Breslin v. Brainard*, No. 01-7269, 2003 U.S. Dist. LEXIS 18147, 2003 WL 22133833, n.8 (E.D. Pa. Sept. 15, 2003).  Reasonable suspicion requires specific and articulable facts, *i.e.*, something more than suspicion or hunch, in support of a decision to initiate an arrest.  *United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992).

Walker alleges that Robertson lacked reasonable suspicion to arrest him because she knew he had not committed any parole violations, and that Robertson, Jacobson and Gourley manufactured the account of his conduct at the meeting.  *See Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).  Viewing the complaint in the light most favorable to the plaintiff, Walker has alleged a violation of his Fourth Amendment right to be free from unreasonable seizure.

Robertson also claims qualified immunity as a parole officer. Government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established at the time of the objectionable conduct." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009). A right is clearly established if the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202; *Giles*, 571 F.3d at 325. The Supreme Court recently eliminated the rigid two-step "order of battle" required by *Saucier*, and held that courts may exercise discretion in choosing which prong of the qualified immunity analysis to decide first. *Pearson v. Callahan*, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

A parolee's right to be free from unreasonable seizure, though diminished as a result of his offender status, was firmly established at the time of the incident. *U.S. v. Hallman*, 365 F.2d 289, 291 (3d Cir. 1966). Viewing the facts in the light most favorable to Walker, an arrest knowingly based on a false report of parole violation is conduct in violation of the Fourth Amendment. Robertson is not entitled to qualified immunity.

## I.     Eighth Amendment Claim.

Count VII of the amended complaint alleges deliberate indifference in violation of the Eighth Amendment by Williams, Cahill and Danisavich. To establish a violation under the Eighth Amendment, Walker must show that: (1) the defendants were deliberately indifferent to his medical needs; and (2) those needs were serious. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). This requires Walker to demonstrate that prison officials had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed

or recommended medical treatment. *Rouse*, 182 F.3d at 197. Deliberate indifference is demonstrated "when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). This can include deprivation of medically appropriate meals. *Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir. 1983); *Laufgas v. Speziale*, No. 04-1697, 2006 U.S. Dist. LEXIS 62089 (D.N.J. Aug. 31, 2006) (inmate with hypertension deprived of low-sodium diet states a claim for deliberate indifference).

Walker alleges all three defendants–Williams, Cahill and Danisavich–were aware of the insulin shots he received and his medical need to eat. Walker alleges that each of the defendants intentionally refused to allow him to eat over the course of the day and, as a result, he suffered serious and possibly permanent injury. Accepting the allegations in the amended complaint as true and making all reasonable inferences in Walker's favor, it is clear that depriving a diabetic prisoner of meals following two insulin shots is a serious deprivation. Walker has alleged sufficient facts for a fact finder to infer that Williams, Cahill and Danisavich knew of the substantial risk of harm in depriving Walker of food in the circumstances, and acted with deliberate indifference to that risk of harm. Walker has stated an Eighth Amendment claim against Williams, Cahill and Danisavich.

### III. PLAINTIFF'S MOTION TO AMEND/CORRECT THE AMENDED COMPLAINT AND FOR LEAVE TO SERVE PROCESS BEYOND 120 DAYS.

Walker seeks leave to amend his complaint to substitute Michael Green and Susan Dannenberg in Count I; substitute Counselor Lauffer for John Doe 21 in Counts IV, V, and VI; and dismiss defendant Hower and all other John Doe defendants. Defendants oppose his motion to substitute Green, Dannenberg and Lauffer on the grounds that Walker knew

when drafting the first amended complaint that they were the proper parties in interest, and amendment would be prejudicial and futile as a result of delay. Walker also seeks leave to serve process on Green, Dannenberg, Lauffer and Cahill beyond 120 days.

### A.    Amending the Complaint to Add Defendants.

Fed.R.Civ.P. 15(a) allows a party to amend a pleading by leave of court when justice so requires. While the standard is a liberal one, a court is not required to grant leave to amend in every instance where it is sought. The decision to grant leave to amend rests within the discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment. *Foman*, 371 U.S. at 182; *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001). "Only when these factors suggest that amendment would be 'unjust' should the court deny leave." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).

### 1.    Green and Dannenberg

Walker seeks to substitute Green and Dannenberg for "1-20 John & Jane Does, Members, Interviewers, & Supervisors" of the PBPP in Count I. The naming of a John Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant. *Talbert v. Kelly*, 799 F.2d 62, 66 n.1 (3d Cir. 1986). When a party seeks to substitute a new party after expiration of the limitations period, including replacing a "John Doe" defendant with a named defendant, the party seeking leave to amend must meet the requirements of Rule 15(c)(1). *See Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977); *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003); *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 n.4 (3d Cir. 1995). An amended

complaint is futile if it would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

The denial of parole Walker complains of occurred in 2005; Walker admits that the limitations period has long since expired. Nor can the proposed amendment relate back to Walker's initial complaint, because the court concludes Count I is barred by the statute of limitations. Over four years have passed since the incident complained of, and adding Green and Dannenberg as defendants would be futile because actions against them are barred by the applicable two year statute of limitation.

### 2.     Dr. Lauffer

Walker seeks to substitute Dr. Lauffer for "John Doe 21" and "John Doe Counselor" in Counts IV, V and VI. Because the events complained of in those counts occurred beginning in early 2008, there is no statute of limitations bar; whether to grant leave to amend must be judged under the Rule 15(a) standard.

The defendants object to the substitution of Dr. Lauffer on grounds of undue delay and prejudice. Defendants argue that because Walker interacted with Dr. Lauffer at the Allentown CCC just last year, there is no reasonable ground for him to assert it took until February 2009 to ascertain Dr. Lauffer's identity.

Walker was aware of Dr. Lauffer's name and information by May 2008, well before January 2009 when the court permitted his first amended complaint. When this court asked Walker who was in attendance at the March 25, 2008 meeting, he stated on the record, "One, my counselor was Mr. LeFleur [sic]." *See* Hr'g Tr. 8:18-20 (paper no. 10). Walker went on to state, "I have these names in my cell, I never even thought to bring them down. . . . I wrote all their names down, I got them spelled right and all, I have them on a piece of paper." Hr'g Tr. 8:22-9:3.

Our Court of Appeals has stated:

> The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. . . . However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." ***Delay may become undue when a movant has had previous opportunities to amend a complaint.*** . . .Thus, while bearing in mind the liberal pleading philosophy of the federal rules . . . the question of undue delay requires that we focus on the movant's reasons for not amending sooner.

*Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001)(internal citations omitted, emphasis added); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were pleading facts that could have been pled earlier). The factual information on which the proposed amendment relies was known at the time of the first amended complaint and a year before Walker sought leave to amend for the second time. No reasonable explanation has been provided to justify the delay. In the circumstances, the "interests of justice" do not require that plaintiff's motion for leave to amend be granted.

### B.    Leave to Service Process Beyond 120 Days

Walker also seeks leave to serve process on Green, Dannenberg, Lauffer and Cahill beyond 120 days. For the reasons stated in Sections III(A)(1) and (2) above, this request is moot as to Green, Dannenberg and Lauffer because the defendants have not been added. For the reasons stated in Section II(C), this request is moot as to Cahill because he has waived service of process. Walker's motion for leave to serve process beyond 120 days will be denied as moot.

### IV.    DEFENDANTS' MOTION FOR LEAVE TO FILE A REPLY

This court does not permit reply briefs absent leave of court. If oral argument is granted, leave to reply is usually denied. *See* Judge Shapiro's Policies and Procedures *in*

Handbook of Pre-Trial and Trial Practices and Procedures of the United States District Court for the Eastern District of Pennsylvania, Appx. 1, *available at* www.paed.uscourts.gov. Oral argument was granted on defendants' motion to dismiss in part and leave to reply will be denied. Defendants' proposed reply brief, attached as Exhibit A to the motion in anticipation of the motion being granted, will be stricken.

## V.    CONCLUSION

The court will deny plaintiff's motion for leave to amend the complaint and to serve process beyond 120 days as futile, unduly delayed and moot.

The court will grant in part defendants' motions to dismiss. Walker has not alleged wrongful conduct by defendant Clewell, and she will be dismissed. Walker's claim under the Fourteenth Amendment in Count I is barred by the statute of limitations and will be dismissed. Cahill's motion to dismiss for lack of timely service is denied as moot. Walker alleges sufficient facts to support claims under Section 1983 for retaliation, conspiracy, false arrest, and deliberate indifference, and defendants' motions will be denied as to these claims.

The following counts remain: (a) Count II, retaliation, against Williams, Cahill and Danisavich; (b) Count III, retaliation, against DiGuglielmo, Hensley and Pasquale; (c) Count IV, retaliation, against Jacobson, Robertson and Gourley; (d) Count V, conspiracy, against Jacobson, Robertson and Gourley; (e) Count VI, unlawful seizure, against Jacobson, Robertson and Gourley; (f) Count VII, deliberate indifference, against Williams, Cahill and Danisavich; and (g) Count VIII, conspiracy, against Williams, Cahill and Danisavich.

The court will deny defendants' motion for leave to file a reply. An appropriate order follows.